UNITED STATES STEEL COR-
PORATION

v.

The UNITED STATES.

No. 215–55.

United States Court of Claims.

June 5, 1956.

Richard H. Appert, New York City, for plaintiff. A Chauncey Newlin, John A. Garvey, Jr., William L. Hearne, and White & Case, New York City, were on the brief.

Sheldon J. Gitelman, Silver Springs, Md., with whom was Asst. Atty. Gen. H. Brian Holland, for defendant. Andrew D. Sharpe and John A. Rees, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff seeks to recover $264,942.19, which was the total of a Federal documentary stamp tax assessed against plaintiff under sections 1800 and 1802(a) of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. §§ 1800, 1802 (a), and the interest thereon.

The plaintiff is a corporation organized and existing under the laws of the State of New Jersey. From 1901 to 1931 plaintiff issued a total of 8,703,252 shares of common stock, having a par value of $100 per share, and thereby dedicated to capital the total amount of $870,325,200. This sum was carried on plaintiff's books in an account denominated "Common Stock Capital Account." A Federal stock issue tax was paid in respect to all of the shares issued under the statutes in force at the time of the various issues.

Of the aforementioned shares of common stock issued, 1,587,017 were issued in 1929, 1930, and 1931 for cash and property having an aggregate book value of $239,951,721.42, or $81,250,021.42 in excess of the par value of such shares. In respect to these shares plaintiff paid a Federal stock issue tax at a rate of 5 cents per $100 of par value in accordance with Schedule A, Title VIII, Revenue Act of 1926, 44 Stat. 99, 101. No tax was paid with respect to the $81,250,021.42 excess, and that amount was placed in the capital surplus account on plaintiff's books, and was not dedicated to capital.

In 1938 the plaintiff changed its common stock from par value of $100 per share to no par value with a stated value of $75 per share. This resulted in a reduction in the stated value of the common stock then outstanding and in the common stock capital account from $870,325,200 to $652,743,900, or a reduction of $217,581,300. This amount was credited to the capital surplus account and, when added to the $81,250.021.42 already in that account, brought the total capital surplus to $298,831,321.42.

Later in 1938, plaintiff decided that some intangible property which had been carried on the books at a value of $260,368,521.53 was almost worthless and this amount was written down to $1.00. The sum of $260,368,520.53 was charged against the capital surplus account, reducing the balance in this account to $38,462,800.89.

After these transactions plaintiff had in its common stock capital account $652,743,900 and in its capital surplus account $38,462,800.89. No changes occurred in these accounts for approximately 10 years.

Then, at a meeting of plaintiff's Board of Directors held on January 25, 1949, the Board resolved to increase the common stock capital account as of December 31, 1948, by $217,581,300 so that each of the no par shares of common stock then outstanding would have a stated value of $100 per share instead of $75 per share. In order to do this in part, all of the amount remaining in the capital surplus account was transferred to the common stock capital account, eliminating the balance of the capital surplus account. But since the capital surplus account had been depleted by the charge-off of $260,368,520.53 for worthless intangibles in 1938, it was necessary to secure the balance of $179,118,499.11 from the earned surplus account in order to provide the amount needed to increase the stated value of common stock to $100 per share. Thus, $179,118,499.11 was charged against the earned surplus account, $38,462,800.89 was charged against the capital surplus account, and a total of $217,581,300 was credited to the common stock capital account, raising the amount in that account to the desired level.

At the same time the Board also determined that it would be advisable to split the common stock 3 for 1 by changing each share without par value into three shares without par value and to change the stated value of each share of common stock to $33⅓. The stockholders approved of this stock split at the first meeting of the stockholders subsequent to the meeting of the Board of Directors. Pursuant to this action of the Board of Directors and the stockholders, two additional shares of no par common stock were issued for each share outstanding.

Subsequently, a tax was imposed upon plaintiff under sections 1800 and 1802(a) of the Internal Revenue Code of 1939, as amended. Section 1802(a) provides that upon an original issue of capital stock a tax shall be imposed as follows:

"(a) *Original issue.* On each original issue, whether on organization or reorganization, of shares or certificates of stock, or of profits, or of interest in property or accumulations, by any corporation, or by any investment trust or similar organization (or by any person on behalf of such investment trust or similar organization) holding or dealing in any of the instruments mentioned or described in this subsection or section 1801 (whether or not such investment trust or similar organization constitutes a corporation within the meaning of this title), on each $100 of par or face value or fraction thereof of the certificates issued by such corporation or by such investment trust or similar organization (or of the shares where no certificates were issued), 11 cents: *Provided,* That where such shares or certificates are issued without par or face value, the tax shall be 11 cents per share (corporate share, or investment trust or other organization share, as the case may be), unless the actual value is in excess of $100 per share; in which case the tax shall be 11 cents on each $100 of actual value or fraction thereof of such certificates (or of the shares where no certificates were issued), or unless the actual value is less than $100 per share, in which case the tax shall be 3 cents on each $20 of actual value, or fraction thereof, of such certificates (or of the shares where no certificates were issued): *Provided further,* That where such certificates (or shares, where no certificates are issued) are issued in a recapitalization, the tax payable shall be that proportion of the tax computed on such certificates or shares issued in the recapitalization that the amount dedicated as capital for the first time by the recapitalization, whether by a transfer of earned surplus or otherwise, bears to the total par value (or actual value if no par stock) of such certificates or shares issued in the recapitalization. The stamps representing the tax imposed by this subsection shall be attached to the stock books or cor-

responding records of the organization and not to the certificates issued."

The entire $217,581,300 transferred to the common stock capital account as of December 31, 1948, was considered newly dedicated capital and was taxed under the provisions set out above. Plaintiff paid the tax and the interest thereon, which altogether amounted to $264,942.-19. It now seeks to recover this amount.

Plaintiff says that none of the $217,-581,300 transferred to the common stock capital account as of December 31, 1948, was an "amount dedicated as capital for the first time" and that, therefore, no tax was due.

■ From the facts set out above it seems clear that the $179,118,499.11 transferred from the earned surplus account to the common stock capital account was an "amount dedicated as capital for the first time".

It is plaintiff's contention that if the $260,368,520.53 charged off for worthless intangibles in 1938 had been charged against earned surplus, as it says could have been done, instead of against the capital surplus account, the $179,118,-499.11 transferred from the common stock capital account to the capital surplus account in 1938 would still have been in the capital surplus account in 1948, and its retransfer to the common stock capital account would not have been a "dedication [of it] as capital for the first time."

The answer to this is that this was not in fact done, and it was not improper to have done what was done. The capital of the company was represented in part by these intangibles, and when they were ascertained to be worthless, it was proper for them to be charged off against the capital account. At any rate, this was what was done. The amount previously dedicated to capital was reduced, because some of the capital had become worthless. This is the way plaintiff chose to handle the transaction.

Under certain facts it might have been proper to have charged these worthless intangibles to earned surplus, on the theory that they had been consumed in the earning of the surplus; but, under the circumstances of this case, plaintiff thought it proper to charge them against the capital account, instead of the earned surplus account, and we cannot say this was improper.

■ It is plaintiff's position that where an amount dedicated to capital is properly written off the books, due to a decline in the value of assets, a subsequent addition to capital out of earned surplus will not be an "amount dedicated as capital for the first time" as long as the addition to capital does not exceed the previous reduction. Neither the legislative history nor the cases cited by plaintiff support this position, and we do not believe that Congress intended such a result when it added the 1947 amendment to section 1802(a) restricting the taxable amount to that "amount dedicated as capital for the first time by the recapitalization".

■ Prior to the 1947 amendment to section 1802(a), when new shares of stock were exchanged for shares outstanding and, at the same time, a new amount was added to the capital account, the Treasury attempted, in some instances, to make the stamp tax applicable to both the previously existing capital and the newly added capital. This result was permitted in Southern Pacific Co. v. Berliner, 9 Cir., 176 F.2d 671, a case arising prior to the 1947 amendment, but decided subsequent thereto, and in other cases. This court, in considering this problem, held that the tax was applicable only to sums newly added to the capital account and not to both the previously existing capital and the newly added capital. Crown Cork & Seal Co., Inc., v. United States, 94 F. Supp. 117, 118 Ct.Cl. 156. Although the Crown case arose prior to the 1947 amendment, it was decided subsequent to its enactment, and the court indicated that the 1947 amendment was added to make it clear that, in situations similar to the one then before it, the tax should be applicable only to sums newly added to the capital account.

We believe that this was the purpose of the amendment, i. e., Congress intended to make it clear that an amount already in the capital account should not be taxed a second time when a new amount was added to capital and new shares of stock issued. But the $179,118,499.11 taken out of earned surplus and placed in the capital account in the present case was not an amount already in the capital account. It was an amount added to capital for the first time and was properly taxable, as we held in the Crown Cork & Seal Co. case, supra.

■ But plaintiff says this is contrary to section 113.23(e) of Treasury Regulation 71 (1941 ed.), 26 CFR 113.23(e), which reads as follows:

"* * * A tax is not payable with respect to stock issued in a recapitalization unless the recapitalization results in the dedication of an amount as capital which amount is so dedicated for the first time. Thus, where a corporation transferred an amount from capital to capital surplus in a prior recapitalization, and such corporation in a subsequent or second recapitalization transfers such amount from capital surplus to capital under such circumstances that the amount so restored to capital is clearly identifiable, a tax is not payable with respect to the amount so rededicated as capital. However, the tax is payable with respect to a transfer of capital surplus to capital by way of a recapitalization where the amount so transferred had not been previously dedicated as capital."

This position cannot be sustained because the $179,118,499.11 transferred from earned surplus to capital cannot be identified as an amount previously dedicated to capital, because it had never been dedicated to capital. It was an amount in the earned surplus account, and, therefore, available for the payment of dividends, or for any other use, since such use of it would not impair the capital. On the other hand, if it had been dedicated to capital, it would not have been available for the payment of dividends,

under the laws of some of the States, at least.

In none of the cases cited by either party was an amount previously dedicated to capital written off the books due to a decline in the value of assets as here. For this reason the cases cited are not controlling in the present situation. Since the $179,118,499.11 transferred from earned surplus to the capital stock account had never been dedicated to capital, and since no tax had ever been imposed upon it, we think that a tax on that amount was properly imposed when such dedication did occur.

■ There remains the question of the $38,462,800.89 transferred from the capital surplus account to the common stock capital account. This question appears to be a novel one.

Plaintiff says that there would not have been this balance in this account except for the transfer to it of the $217,-581,300, which had previously been dedicated as capital, and the tax paid on the certificates issued in respect to it. This would seem to be correct.

But, at the same time, there would not have been this balance in the account except for the $81,250,021.42 premium paid for stock previously issued. No tax was paid with respect to this $81,250,021.42; nor had it ever been dedicated as capital. It could have been distributed as a dividend at the will of the corporation. A part of it was never set apart as capital, because it was consumed in the worthless intangibles charged off.

The result is that the balance of $38,-462,800.89 remaining in the capital surplus account, was made up partly of previously dedicated capital and partly of an undedicated amount. Defendant says that the commingling of a dedicated amount and an undedicated amount in the capital surplus account and the subsequent withdrawal of the $260,368,520.-53 from that account for the purpose of writing off worthless intangible assets made it impossible to identify any of the $38,462,800.89 remaining in the account as previously dedicated capital.

We do not agree. Of the $298,831,321.42 in the capital surplus account before the withdrawal of the $260,368,520.53 to write off intangibles, $81,250,021.42 had never been dedicated to capital. Of the balance of $38,462,800.89 remaining in the account after the withdrawal, we think that 81,250,021.42/298,831,321.42 of it, or $10,457,750.48, was an undedicated amount.

This makes the total amount "dedicated as capital for the first time," $189,576,249.59, and the Government properly assessed a stamp tax on this amount.

■■ Plaintiff also seeks to recover on the theory that the dedication of capital as of December 31, 1948, and the issuance of stock in June 1949 were separate transactions, neither of which was subject to a tax when occurring alone. We agree that both of these elements are necessary before a tax may be imposed under section 1802(a). However, they were in reality parts of a single plan originating at the meeting of the Board of Directors on January 25, 1949, and should be so considered. And even if they should be considered as separate transactions, it would not change the result. A corporation may transfer part of its surplus to its capital account without then incurring taxable liability if no stock is issued, but if stock is subsequently issued in connection therewith, the amount transferred is then taxable.

A stamp tax was properly assessed by the defendant upon $189,576,249.59 which amount was dedicated to capital for the first time. Plaintiff is entitled to recover the difference between what it actually paid and what it should have paid in accordance with this opinion, with interest thereon as provided by law. Judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and MADDEN and LITTLETON, Judges, concur.

LARAMORE, Judge (dissenting).

I respectfully dissent because I believe the majority opinion is contrary to the plain terms of the statute, and it bases the Federal stock issue tax solely on bookkeeping entries as such, which have never been considered controlling of any substantive question of tax law.

During the years 1901 to 1931 plaintiff issued 8,703,252 shares of common stock, having a par value of $100 per share, and thereby dedicated to capital the total amount of $870,325,200. Federal stock issue tax was paid on this amount. In 1938 plaintiff changed these shares from $100 par to no par with a stated value of $75 per share. This reduced the common stock capital account by $217,581,300. As of December 31, 1948, the stated value of each share was increased by $25, so that the amount dedicated to capital was again $870,325,200.

The pertinent part of section 1802(a) provides that a stock issue tax shall be imposed:

"On each original issue, whether on organization or reorganization, of shares or cerificates of stock, * *: *Provided further*, That where such certificates (or shares, where no certificates are issued) are issued in a recapitalization, the tax payable shall be that proportion of the tax computed on such certificates or shares issued in the recapitalization that the amount dedicated as capital for the first time by the recapitalization, whether by a transfer of earned surplus or otherwise, bears to the total par value (or actual value if no par stock) of such certificates or shares issued in the recapitalization. * * * "

It is seen from the terms of the above provision that the tax is imposed in a recapitalization only on "the amount dedicated as capital for the first time by the recapitalization, whether by a transfer of earned surplus or otherwise". The term "amount" so used in this section means a quantity, a number, and not particular dollars or funds as the majority opinion

indicates. For the purpose of this proviso see H. Rept. 969, 80th Congress, 1st session. It seems clear that the reduction of the amount dedicated to capital and the subsequent restoration of the amount of the reduction is a rededication of that amount to capital and not the dedication of that amount for the first time.

Section 113.23(e) of Treasury Regulation 71, set out in the majority opinion, specifically recognizes that the reduction of the amount dedicated to capital and the subsequent restoration of the amount of the reduction is a rededication of that amount and not a dedication of that amount for the first time, provided the amount can be traced and identified. Thus, as indicated by the regulation, the following example would not result in a tax. The taxpayer reduces the amount dedicated to capital by $100 and credits a separate account called capital surplus, or some other name to identify it, with $100 and debits the capital stock account with $100. Ten years later in a recapitalization the taxpayer decided to again dedicate that $100 amount to capital. It has maintained this $100 credit in a separate account on the corporate books. It then debits this separate account $100 and credits the capital stock account $100. As stated above, no tax is due since there was a rededication *and* the taxpayer has maintained the credit entry of $100 separate on its books.

The only difference between what the regulation allows, as shown by the above example, and the instant case is that plaintiff did not keep its credit entry in a separate account. In 1938 plaintiff debited its common stock capital account $217,581,300 and credited that amount to account labeled capital surplus, which already had a credit balance of $81,250,-021.42, thus bringing the total credit balance to $298,831,321.42. As of December 31, 1948, plaintiff decided to raise its common stock capital account back to the amount of $870,325,200. It debited the capital surplus account $38,462,800.89,

eliminating the balance in that account, debited earned surplus account $179,118,-499.11, and credited common stock capital account $217,581,300, thus increasing that account to $870,325,200.

The majority opinion holds that the full amount cannot be traced or identified because the accountant charged capital surplus with the writedown of the intangibles instead of earned surplus. The statute does not require the tracing of funds, which is in and of itself an artificial concept, but on the contrary specifically states that only the "amount dedicated as capital for the first time by the recapitalization, whether by a transfer of earned surplus or otherwise," is to be taxed. The clause "whether by a transfer of earned surplus or otherwise" indicates that Congress was not basing the tax on book entries. I do not believe that Congress ever intended that the tax would be determined on whether the accountant used one surplus theory in keeping the books of the corporation or another. Whether an item should be charged to earned surplus, capital surplus, or to some other account, varies from accountant to accountant. There could be found ample authority among accountants for the charging of the intangibles in the instant case to earned surplus rather than to capital surplus. This is especially true where, as in this case, capital surplus was made up of entirely paid-in capital instead of the various and sundry other items that could have been credited to that account. Some of the difficulty that will result from treating bookkeeping entries as controlling taxability is demonstrated by the difficulty the majority opinion has with the $38,462,800.89 balance in the capital surplus account before the rededication.

I would allow the plaintiff to recover the Federal stock issue tax paid on the $217,581,300 because that *amount* had already been subjected to the tax once and the plain term of the statute prohibited its being taxed a second time.